was not as prize, but with a view to plunder.

But, in relation to those who acted under the orders of Butler, the same inference does not necessarily follow. He had a right to command those persons to visit the Spanish ship, to bring away her papers, and if he pleased to go so far, even to tranship her cargo, and to take from the persons of the crew, whatever valuables might be found on them. These orders were not inconsistent with the act of seizing the property as prize, and at most, could only be considered as equivocal. Unattended by other circumstances, to induce a well-grounded suspicion of the honesty of Butler's intentions, the orders were legal, and the prisoners were bound to obey them. If so, the subsequent evidence which the conduct of Butler afforded of the quo animo, with which the seizure was made, cannot be used against these men, to fix the charge of a felonious taking upon them, notwithstanding it was quite sufficient to criminate him, who gave the orders. The prisoners acted very improperly, in accepting any share of the plunder, before it was regularly condemned; but this would not, of itself, afford direct proof, that they executed the orders of their commander, knowing that they were illegal and criminal. It must, at the same time, be admitted, that connecting all the subsequent events with the original taking, the innocence of the prisoners may well be suspected; and the jury may presume, that they acted under an impression from the beginning, that it was not the intention of Captain Butler to seize this property as prize. It does not appear, that an intention to make a seizure of this character, was ever declared by Butler. The ordering the Spanish vessel from the coast; the division of the plunder; and the secrecy observed in relation to these transactions by Butler and the prisoners, after they landed at Charleston, without a murmur of disapprobation having at any time been heard to escape from the prisoners to the captain; are all circumstances to be weighed by the jury, to prove a felonious intent in the prisoners, at the time they obeyed the orders of their commander. Should you, gentlemen, be of opinion, that this is the fair inference to be deduced from those circumstances, then the prisoners cannot shield themselves under the orders of their captain; and in that case, your verdict ought to find them guilty. But if you cannot conscientiously make such an inference, then it will be your duty to acquit the prisoners.

Verdict. "Not guilty."

UNITED STATES (JONES v.). See Case No. 7,499.

## Case No. 15,497.

UNITED STATES v. JONNSON.

[See Case No. 15,482a.]

## Case No. 15,498.

UNITED STATES v. JORDAN et al.

[2 Lowell, 537; [1] 23 Int. Rev. Rec. 9.]

District Court, D. Massachusetts. Dec., 1876.

CUSTOMS LAWS—ILLEGAL IMPORTATIONS — FORFEITURES—REPEALING STATUTES.

1. Section 2 of St. March 3, 1823 [3 Stat. 781], which imposes a forfeiture of double the value of goods illegally imported, upon any one who knowingly receives them, is not confined to goods imported from territory adjoining the United States.

2. Nor is that section confined to cases arising under statutes in operation when that section was enacted.

3. The act of entering goods by a false invoice comes within the definition of an illegal "importation" under that section.
[Cited in U. S. v. 2,419 Sheepskins, Case No. 16,589a.]

4. That section was repealed by the Revised Statutes, which were passed June 22, 1874 [18 Stat. 186], and not before, and then not retroactively; and this case, which was begun May 1, 1874, is not affected by the repeal.

5. Congress appears, in Rev. St. § 5596, to express the opinion that this section had been repealed by some statute before 1874, and they probably had in mind the act of 1866; but this expression of opinion does not overrule U. S. v. Stockwell, 13 Wall. [80 U. S.] 431.

E. R. Hoar and G. P. Sanger, Dist. Atty., for the United States.

B. F. Brooks and F. W. Hurd, for defendants.

LOWELL, District Judge. The eighty-one counts for double values are brought under section 2 of the act of March 3, 1823 (3 Stat. 781), which imposes that penalty upon all persons who shall receive goods, knowing them to have been illegally imported and liable to seizure by virtue of any act relating to the revenue; which is understood, according to the decision in Stockwell v. U. S., 13 Wall. [80 U. S.] 531, to subject the importer himself to a penalty or forfeiture of treble the value of the goods so imported: one as importer, and two as receiver; and the declaration in this action is framed on that theory, which is not now denied by the defendants. But they maintain, in support of their demurrer, that in certain particulars this case differs from Stockwell's, and that these are of vital consequence. The illegality is alleged to have consisted in entering goods by means of fraudulent invoices.

1. The first point taken is, that the act of 1823 only applies to importations from adjacent territory. It is true that the title of the act makes it an amendment of that of 1821, which is exclusively devoted to such importations; but the second section mentions "any act relating to the revenue," and this is too clear to be controlled by the title.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]